·COSMAN EISENDRATH *et al.*

*v.*

EDWARD KNAUER *et al.*

1. TROVER—*title necessary to maintain.* It is a general rule that, without an absolute or special property in the thing alleged to have been wrongfully converted, trover can not be maintained, and a right of immediate possession before or at the time of the converson is essential.

2. SAME—*special property.* It is the recognized law, that a person having a special property in goods may maintain trover against *a stranger* who

takes them out of his *actual* possession, as, a sheriff, a carrier, a factor, a warehouseman, consignee, a pawnee or trustee, or an agister of cattle, a gratuitous bailee, or any person who is responsible over to his principal.

3. The nature of this special property is not very accurately defined, and seems to depend upon the circumstances of the case. In a strict sense, it consists in the lawful custody of the goods with a right of detention against the general owner; but a lower degree of interest will be sufficient against a stranger, for the reason that a mere wrongdoer is not permitted to question the title of a person in the actual possession of the goods, whose possession he has wrongfully invaded.

4. SAME—*special property as against owner.* But where the action was brought against the general owner or payee of a bank check by a mere depositary having no interest in the same, under the following circumstances: The drawers of the check having bought real estate and received a deed therefor, gave their check to the grantors for the price due them, but, desiring an abstract of title brought down to that date, left the check with the plaintiff to hold for the drawees until such abstract was furnished, and the plaintiff delivered the same to the drawees to have the same presented for payment, with their agreement to return it in case of protest, but the same having been paid, they refused to return the same, and defendants performed the condition before suit: *Held*, that it was incumbent on the plaintiff in trover against the drawees for the conversion of the check to show a qualified right or interest in the check, a *jus in re*, or some fixed right attached to it, either legal or equitable, in order to recover.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. RUTHVEN V. PIKE, for the appellants.

Mr. ARTHUR W. WINDETT, and Mr. JOHN J. HERRICK, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was an action of trover, brought in the Superior Court on the 23d of February, 1872, by the Knauer brothers against Eisendrath & Regensburg, to recover for the alleged wrongful conversion, by the defendants, of a certain bank check bearing date the third of October, 1871, and drawn upon the Hibernian Banking Association by one Thomas Carney, in favor of the defendants, who were named as payees therein.

Plea of general issue was filed, and at the April term of said court, by agreement of parties, the cause was submitted to the court for trial without a jury. The court found the defendants guilty and assessed the plaintiffs' damages at $3,397.35.

Motion was made to set aside the finding, which was over-ruled, judgment given on finding, and exception taken.

The bill of exceptions purports to contain all the evidence given on the trial.

The defendants bring the case to this court by appeal, assigning for error: (1.) That the finding of the court is unsupported by the evidence. (2.) That the court excluded material and competent evidence offered by them on the trial.

The chief circumstances established by what we conceive to be the clear weight and preponderance of the evidence are, that about the 3d of October, 1871, the date of the check in question, the defendants sold to Carney a parcel of real estate which, we infer, was situated in the city of Chicago, but which was subject to a mortgage of $5000. The price fixed upon the property was $8300, but Carney was to take it subject to the mortgage, and pay the defendants $3300 in cash. The plaintiffs acted, in a measure, as brokers, in making this trade. It nowhere distinctly appears by whom they were originally employed, but the clear inference is, that they were acting for Carney alone. The defendants were represented in all matters, which they did not attend to personally, by Nathan Eisendrath.

The defendants, their wives uniting in the conveyance; executed in due form, as we assume, for no objection has been made to it, a warranty deed of the premises to Carney, which, with an abstract bringing the title down to the defendants, was produced at the office of the plaintiffs. Carney was there, and the deed of defendants was unconditionally delivered, so far as the grantors were concerned. Carney was referred, by Nathan Eisendrath, to Theodore Schintz, Esq., as being familiar with the abstract, and directed to consult him. Upon

one of the plaintiffs remarking that the grantor's warranty was good, Carney then signed the check in question, which had been filled up by Nathan Eisendrath, left it with the latter, and then went to see Schintz. When he returned he reported that Schintz advised him that the title appeared to be good, but the abstract only brought the title down to defendants, and a further abstract should be obtained bringing it down to the present time. Whereupon, as Nathan Eisendrath testifies, he volunteered to leave the check with the plaintiffs until that should be done. One of the plaintiffs testifies, however, that Carney laid it down on their table, with directions, in substance, to deliver it to defendants when everything was right.

There is some conflict between these witnesses in respect to the person from whom the plaintiffs received the check. Knauer's testimony is not very satisfactory. He admits that he was very busy with other matters at the time. He states that the check was permitted to lie a long time on the table without being in anybody's immediate care; and besides, he is one of the parties to the suit, while Eisendrath is not a party and is wholly disinterested, except as to his relationship to one of the defendants, and the fact of his agency.

Knauer does not pretend to deny Eisendrath's statement that Carney delivered the check to him, and Carney was not called as a witness at all. Assuming both of these witnesses to be honest, as we are bound to do, yet, under all the circumstances disclosed, Eisendrath is entitled to greater credit than Knauer.

If Eisendrath, after the delivery of the check by Carney to him, left it with the plaintiffs to be held until they produced the additional abstract, then the defendants were plaintiffs' principals or bailors, instead of Carney.

But conceding that the finding of the court below upon this fact ought to be held conclusive, then how does the case stand?

Before the additional abstract could be obtained, the great fire came, which destroyed the records and suspended all

operations in the abstract line for a considerable period of time. But before the commencement of this suit, and as soon as practicable, such additional abstract was obtained and presented to the plaintiffs. It is conceded that it shows a complete title in the defendants, except the $5000 mortgage, which Carney assumed.

Soon after the making of the deed and check, a controversy arose between Carney and the defendants in respect to some back interest on the mortgage, amounting to $125, which Carney claimed defendants should pay. The latter then requested Carney to give up the trade and return their deed, but which he refused to do. They then paid that sum to the plaintiffs for Carney.

After the fire, the defendants became exceedingly uneasy in regard to their situation. They had parted with their deed to Carney, and the latter had, as the plaintiffs' own agent admitted, delivered his check to such agent for $3300. It naturally enough occurred to them that if the check was so delivered, the law imposed upon them the duty to present it within a reasonable time; if they failed to do so, and Carney had the funds at the bank with which to pay it, and the bank should fail in consequence of the great fire, or for any other cause, the loss would fall upon them. To obtain the additional abstract at that time was impossible. Stimulated by this anxiety, the defendants made frequent applications to the plaintiffs for the check, for the purpose of protecting themselves. As often as they applied they were told by the plaintiffs that the check was already worthless; that Carney had stopped payment of it. One of the defendants, Cosman Eisendrath, insisted that he must have it presented then and protested, and requested Edmund Knauer to go with him to the bank, make the demand and have it protested. Knauer assured defendants that the check was worthless, excused himself from going, for want of time, and finally said, as he testifies: "Well, Mr. Eisendrath, if you want to do that, here in the presence of my two clerks I will hand you this check over,

if you will give me your word as a gentleman *you will return the check after you have protested it.*"

Knauer swears that Eisendrath assented to this, and took the check under that promise. Eisendrath says himself that he agreed to return the check if payment was refused and it was protested; that if it was worthless he did not want it; but that nothing was said about returning it if the check was good and was not protested, and this is not controverted.

It turned out, however, that all of plaintiffs' representations to defendants that the check was worthless, payment had been stopped, and that it would not be paid, and by which defendants were induced to make the promise to return it after they had protested it, were false, for, upon presentation of the check at the bank on which it was drawn, it was promptly paid.

Upon this state of facts the action of trover was brought by the Knauers against the defendants, the payees in the check, and the court has rendered judgment for the full amount of the check with interest from the time of its payment.

Can this judgment be sustained? This question involves two propositions: (1.) Whether the proof shows a cause of action in plaintiffs. (2.) If it does, whether they were entitled to recover the full amount of the check

First, then, as to the cause of action. It is a general rule that, without an absolute or special property in the thing alleged to have been wrongfully converted, trover can not be maintained. 1 Chit. Pl. 149. And a right of immediate possession before or at the time of the conversion is essential.

It is the recognized law, that a person having a *special* property in goods may maintain trover against *a stranger* who takes them out of his *actual* possession, as, a sheriff, a carrier, a factor, a warehouseman, consignee, a pawnee, or trustee, or an agister of cattle, or a gratuitous bailee, or any person who is responsible over to his principal. 1 Chit. Pl. 151.

In all of these cases the action is said to lie in favor of the person having a *special* property in goods against *a stranger*

26—64TH ILL.

who takes them out of the *actual* possession of such person. The nature of this special property, essential to the action of trover, is not very accurately defined, and seems to be dependent upon the circumstances of the case. Greenleaf, speaking of it, under the head of trover, says: "Special property, in a strict sense, may be said to consist in the lawful custody of the goods, with a right of detention against the general owner; but a lower degree of interest will sometimes suffice against a *stranger*, for a mere *wrongdoer* is not permitted to question the title of a person in the actual possession and custody of the goods, whose possession he has wrongfully invaded." 2 Greenleaf Ev. sec. 637.

This case was tried and decided in the court below as though it belonged to the class of cases where goods are taken by a stranger from the actual possession of the plaintiff; but it clearly does not, and the plaintiffs were bound to prove a special property in themselves in a substantial sense. It was incumbent upon them to show a qualified right or interest in the thing, a *jus in re*, or some fixed right attached to it, either equitable or legal. This principle is recognized in the case of *Chickering* v. *Raymond*, 15 Ill. 362.

Perceiving the application of this principle, the plaintiffs' counsel asserts that they had a lien upon the check for their commissions. This was an essential part of their case, and should have been shown by proof. There is not a fact or circumstance in the case upon which to base a claim against the defendants for commissions, and the evidence tends strongly to show that plaintiffs were acting solely for Carney.

It would be an extraordinary position for counsel to take, that, because they had a claim against Carney for commissions, they therefore had a lien upon the check he gave to pay the defendants the purchase price of the land they had sold to Carney.

Again, it is said that the defendants were precluded from questioning plaintiffs' property in the check by their promise to return it.

What was that promise?  The plaintiffs, when asked to deliver over the check to defendants, had never once refused upon. the ground that the conditions of an *escrow* had not been complied with, or on the ground that they had any lien upon it, but always for the pretended reason that it was worthless; that payment of it had been stopped. Upon these representations, defendants promised to return it after it was protested. The very terms on which they delivered it over to defendants carried with them an implied authority to present the check for payment, because such presentment was indispensable to a protest, and that was an authority to receive payment, if it was honored. Defendants never promised to return the check, or the proceeds, if it was honored. They were to return the check only in case payment was refused and it was protested, and it is proper to observe, right here, that if the statement of Nathan Eisendrath is true, and we think it is, that he received the check from Carney, and himself left it with plaintiffs until the additional abstract was furnished, then the relation of bailors and bailees existed solely between defendants and plaintiffs, and it was entirely competent for the parties to terminate it altogether, or conditionally, as they chose.

But suppose the check had not been delivered by Carney to Nathan Eisendrath. Carney was to have no credit for the purchase money. Payment was to be cotemporaneous with the delivery of the deed. The evidence clearly shows that the defendants had made an unconditional delivery of their deed, and that Carney had accepted it.

Nathan Eisendrath testifies to facts which amount to acceptance. He is corroborated by the fact of Carney's subsequent refusal to return it, and his exacting payment of back interest. . Defendants were therefore entitled to the immediate payment of the purchase money. Nevertheless, if Carney did not deliver the check to them or their agent, but delivered it as an *escrow* in the hands of plaintiffs, to be delivered over to

defendants when they furnished to plaintiffs the additional abstract showing title in defendants down to time of conveyance, the defendants would acquire no title in the check until performance of the condition, but upon such performance, the depositaries of the *escrow* were bound to deliver it to defendants.    They were as much bound to deliver the check on performance of the condition as they were to withhold it until performance.    2 Washburn on Real Property, 615.

The condition was fully performed before the commencement of this suit, so that defendants were, in any view, lawfully entitled to the check before suit brought.

Suppose defendants had acquiesced in and paid over to plaintiffs the amount of this judgment.    What would have been their position then, in respect to the purchase money for their land?    Plaintiffs' counsel says his clients would then have held the money in lieu of the check.

True, but they would have held it as damages recovered for the wrongful conversion of the check as their own property. The judgment would have been conclusive upon them both as to the right of property and measure of damages.

Will counsel seriously contend that defendants could pay this judgment, then turn around and maintain an action to recover it back?    Such an action would be against first principles.    The record in this case would conclude them, both in law and in equity, from denying property in the check in the plaintiffs.

What new case could they make?    Every fact affecting defendants' right to the check, both at the time of the alleged conversion and intervening that and the commencement of the suit, was given in evidence in this case, and adjudicated upon either as pertaining to the cause of action or measure of damages.

Suppose A brings trover against B for the wrongful conversion of A's horse, and between the time of the alleged conversion and the commencement of the suit, the horse is levied

upon and taken out of B's possession by virtue of an execution against A, sold and applied in payment of A's debt; upon the trial B proves these facts and urges them in mitigation of damages, but the court rules against it and gives judgment for the full value of the horse, which B acquiesces in and pays. Now, by the general rule of law, the payment of the judgment would operate to vest B with the legal title to the horse. But he has lost the horse, and it has gone to pay A's debt, while he has been compelled to pay the full value. Could he, while that judgment remained unreversed, maintain any action against A, upon the special circumstances? Clearly not. He should have appealed and corrected the error of the court in disregarding the matter in mitigation of damages. When the law is properly administered, it is in harmony with itself.

Now suppose that, instead of seeking to recover the money back of plaintiffs, defendants should sue Carney for the purchase money. He occupies a position that is entirely unaffected by this judgment. He is neither party nor privy. He could plead payment, and sustain his plea by showing a delivery of his check to Nathan Eisendrath, and the actual receipt of the money upon it, by his vendors.

It is manifest, therefore, that if this judgment is permitted to stand, the appellants have lost the consideration for their land without any fault on their part, and the appellees would hold the amount of the judgment without any just or legal claim for such recovery.

This view makes it unnecessary to consider the question as to the rejection of evidence.

We are inclined to hold that the plaintiffs had not even a technical cause of action. But assuming that they had, it was clearly erroneous to allow them to recover for the full amount of the check, as though it had been taken out of their actual possession by a stranger and wrongdoer.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*